# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ZURCO, INC., and , | ) | |
| ZURN INDUSTRIES, LLC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 08-185 Erie |
| | ) | District Judge McLaughlin |
| SLOAN VALVE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

Presently pending before the Court is a Motion for Summary Judgment filed by Defendant Sloan Valve Company ("Sloan") and a Motion for Partial Summary Judgment on Defendant's Affirmative Defenses filed by Plaintiffs Zurco, Inc. ("Zurco") and Zurn Industries (collectively, "Zurn").

## I. BACKGROUND

Zurn Industries is a Delaware limited liability company with headquarters in Erie, Pennsylvania. (Complaint ¶ 1). Zurn is a leading manufacturer of plumbing products, including commercial grade urinals, toilets and sinks. Zurn markets, advertises and sells its products to the commercial building trade and other consumers of commercial plumbing services such as chain stores and governmental entities. (Def. Ex. 15, Nicolia Depo., pp. 3, 13-15, 96, 124). As such, the Zurn trade name is "well known" to consumers of commercial plumbing goods and services. (Id. at 25, 56-58).

Zurn is the registered owner of United States Trademark Registration No. 3,146,173 for the mark "ZURN 1." (Pl. Ex. A, Trademark Registration). The ZURN 1 trademark registration,

issued on September 19, 2006, is for "[p]lumbing fixtures sold in package form for industrial and commercial use, namely, toilets, sinks, urinals, hand dryers and automatic hand dryers, and corresponding flush valves and automatic flush valves, faucets and automatic faucets, traps, supply stops, carrier mountings and fittings therefore, and toilet closet flanges." (Id.).

Zurco, based in Wilmington, Delaware, is a holding company for certain intellectual property assets used by Zurn Industries and is not involved in advertising, marketing or selling goods or services. (Zurn Pretrial Statement, Dkt. 48, p. 1; Def. Ex. 10, Interrogatory Answers). Zurco is the registered owner of the following United States Trademark Registrations:

- "ZURN ONE SYSTEMS," United States Trademark Registration No. 3,077,424, issued on April 4, 2006 for "[p]lumbing fixtures sold in package form for industrial and commercial use, comprising faucets, sensors, flush valves, traps, supply stops, tubing for drains, traps and fixtures, carrier mountings and fittings therefore, toilet closet flanges, and corresponding toilets, sinks and urinals." (Pl. Ex. B, Trademark Registration).

- "ZURN ONE," United States Trademark Registration No. 3,030,515, issued on December 13, 2005 for "[p]lumbing fixtures sold in package form for industrial and commercial use, namely, toilets, sinks, urinals, hand dryers and automatic hand dryers, and corresponding flush valves and automatic flush valves, faucets and automatic faucets, traps, supply stops, carrier mountings and fittings therefore, and toilet closet flanges." (Pl. Ex. C, Trademark Registration).

- "THE PINT," United States Trademark Registration No. 3,389,517, issued on February 26, 2008 for "[u]rinals." (Pl. Ex. D, Trademark Registration).

Sloan, an Illinois corporation, is generally engaged in the business of advertising, marketing and selling commercial plumbing goods and services to the commercial building trade and other business and institutional consumers of commercial plumbing services. (Complaint ¶¶ 6,7,9,10). Like Zurn, Sloan is a "well known" name in the commercial plumbing goods and services industry. (Def. Ex. 15, Nicolia Depo., pp. 3, 57-58, 96, 124). In the commercial plumbing industry, Zurn and Sloan are direct competitors who target their marketing, advertising and sales efforts towards a common set of purchasers. (Complaint ¶ 10).

In recent years, in response to environmental concerns, manufacturers have developed environmentally friendly plumbing products such as high efficiency urinal systems and fractional

flush urinals, so named because they use only of a fraction of a gallon of water per flush. In that regard, Zurn developed a fractional flush urinal system which it introduced under the the mark "THE PINT." (Pl. Ex. D). THE PINT is part of Zurn's EcoVantage line of urinals and has a flush volume of approximately 1/8 of a gallon, or one pint, of water. (Def. Ex. 15, Nicolia Depo., pp. 82-86, 105). Zurn first used the trademarked phrase "THE PINT" in connection with a pint urinal on July 1, 2007. (Pl. Ex. D). At that time, Sloan was not using the term "pint" in connection with its own high efficiency urinal systems. (Pl. Ex. F., Response to Request for Admissions, Req. No. 4).

On November 1, 2007, a press release appeared on the website greenlodgingnews.com announcing that Sloan intended to introduce a product called the "Sloan 1 Pint Urinal System" at an upcoming industry tradeshow set to take place in Chicago, Illinois on November 7-9, 2007. (Pl. Ex. G). Shortly thereafter, counsel for Zurn delivered a letter to Sloan expressing concern that Sloan's use of the phrase "Sloan 1 Pint Urinal System" infringed upon the ZURN 1, ZURN ONE, ZURN ONE SYSTEMS, and THE PINT trademarks owned by Zurn. (Pl. Ex. H, November 6, 2007 Letter). Zurn requested that Sloan cease and desist from using the phrase "Sloan 1 Pint Urinal System" as part of the branding of its product. (Id.). Sloan responded by altering its sign at the Chicago trade show to read "Sloan Pint Urinal System." On November 7, 2007, Zurn sent another letter acknowledging that the numeral "1" had been removed from Sloan's promotional signs but indicating that it still believed the phrase "Sloan Pint Urinal System" to be an infringement of their trademarks. (Pl. Ex. I, November 7, 2007 Letter). Zurn demanded that Sloan cease using the word "pint" in connection with promotion of its fractional flush urinal system. (Id.). When Sloan refused to accede to Zurn's demand, Zurn filed the instant lawsuit.

## II.  STANDARD FOR REVIEW

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact.  See Fed. R. Civ. P. 56(c); Krouse v. American Sterilizer Company, 126 F.3d 494, 500 n.2 (3rd Cir. 1997).  The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3rd Cir. 1990).  Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'"  Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3rd Cir. 1990) (quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990)).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial.  Matsushita Elec. Indus. Company v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3rd Cir. 1989) (the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).  The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and

admissions) to meet his burden of proving elements essential to his claim. <u>Celotex</u>, 477 U.S. at 322; <u>Country Floors</u>, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegations or suspicions." <u>Firemen's Ins. Company of Newark, N.J. v. DuFresne</u>, 676 F.2d 965, 969 (3rd Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson</u>, 477 U.S. at 247-249.

## III. ANALYSIS

In its Complaint, Zurn contends that Sloan's use of the phrases "Sloan 1 Pint Urinal System," "Sloan Pint Urinal System," "Sloan Pint" and "1 Pint" are confusingly similar to Zurn's trademarks and, as such, violate Section 32(1) and 43(a) of the Lanham Trademark Act of 1946, 15 U.S.C. §§ 1114, 1125(a) ("Lanham Act"). Section 32(1) of the Lanham Act provides in relevant part:

(1) Any person who shall, without the consent of the registrant–

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such

> use is likely to cause confusion, or to cause mistake, or to deceive,

> shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1). Section 43(a)(1)(A) of the Lanham Act provides in relevant part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .

> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1525(a)(1)(A). "The Lanham Act was intended to make 'actionable the deceptive and misleading use of marks' and 'to protect persons engaged in . . . commerce against unfair competition.'" Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 767-68 (1992) (quoting 11 U.S.C. § 1127).

In order to establish a claim for trademark infringement or unfair competition under the Lanham Act, a plaintiff must prove the following three elements: "(1) the marks are valid and legally protectable; (2) the marks are owned by the plaintiff; and (3) the defendant's use of the marks to identify goods or services is likely to create confusion concerning the origin of the goods or services." Ford Motor Co. v. Summit Motor Products, Inc., 930 F.2d 277, 291 (3rd Cir. 1991)(citing Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187, 192 (3rd Cir. 1990)). The plaintiff bears the burden of proof as to each of the three elements. A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210-11 (3rd Cir. 2000).

The parties do not dispute that Zurn is the registered owner of the phrases "ZURN ONE," ZURN ONE SYSTEMS," "ZURN 1," and "THE PINT." (See Pl. Ex. A, B, C, D, Trademark Registrations).  However, Sloan contends that summary judgment is appropriate based upon Zurn's alleged failure to have raised a triable issue of fact as to the first and third elements of its infringement claim.

## A.    Are the Marks Valid and Protectable?

### 1.    THE PINT

The first element that a party asserting a trademark infringement claim must satisfy is the requirement that a mark be "valid and protectable."  See Ford Motor Co., 930 F.2d at 291.  Whether a mark constitutes a valid and legally protectable trademark is dependent upon whether the mark is sufficiently distinctive to "distinguish[] the applicant's goods from those of other" and to identify the source of the goods.  Two Pesos, 505 U.S. at 768; see also 15 U.S.C. § 1127 (defining "trademark" as any word, name or symbol used by a person "to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods . . .").  "Distinctiveness" is a term of art in trademark law that describes terms or designations that are eligible for legal protection.  Carnivale v. Staub Design, 700 F.Supp.2d 660, 664 (D. Del. 2010) (quoting  2 McCarthy on Trademarks and Unfair Competition, § 11:2 (4th ed. 2010)).  In evaluating the distinctiveness of an asserted trademark, courts attempt to place the mark into one of the following four categories:

> [1] arbitrary (or fanciful) terms, which bear no logical or suggestive relation to the actual characteristics of the goods; [2] suggestive terms, which suggest rather than describe the characteristics of the goods; [3] descriptive terms, which describe a characteristic or ingredient of the article to which it refers[;] and [4] generic terms, which function as the common descriptive name of a product class.

E.T. Browne Drug Co., 538 F.3d at 191 (quoting A.J. Canfield Co. v. Honickman, 808 F.2d 291, 296 (3rd Cir. 1986)) (internal citations and quotation marks omitted).  Marks which are determined to be

arbitrary, fanciful or suggestive are deemed to be "inherently distinctive" and enjoy Lanham Act protection without any additional showing required. <u>Ford Motor Co.</u>, 930 F.2d at 291 n. 18. In contrast, marks which are merely descriptive must "acquire distinctiveness" through proof that the consuming public comes to associate the term with a specific producer rather than the product. <u>See E.T. Browne Drug Co. v. Cococare Products, Inc</u>., 538 F.3d 185, 199 (3rd Cir. 2008). Once a descriptive mark has acquired such distinctiveness, also known as "secondary meaning," it becomes eligible for protection. <u>Id</u>. at 191; <u>see also</u> 15 U.S.C. § 1052(f) (allowing registration of marks that have acquired distinctiveness through secondary meaning). Finally, a mark which is determined to be generic is "never protectable" because a manufacturer "cannot deprive competing manufacturers of the product of the right to call an article by its name." <u>A.J. Canfield Co.</u>, 808 F.2d at 297.

When a mark has been federally registered on the USPTO Principal Register, as is the case here, there is a rebuttable presumption of validity and ownership of the mark. 15 U.S.C. § 1057(b) ("[R]egistration of a mark upon the principal register . . . shall be *prima facia* evidence of the validity of the registered mark and of the registration of the mark."). As such, the burden is on Sloan to demonstrate that THE PINT is either a generic term for a type of urinal or a descriptive term that has not acquired secondary meaning.

Sloan first asserts that THE PINT is a generic because it simply identifies a particular type of urinal (i.e., one only requiring a pint of water to flush). Sloan notes that the common meaning of the term "pint" - a unit of measure equivalent to two cups, 16 fluid ounces, or .125 gallons of liquid - precisely describes the flush volume of the Zurn urinals branded with THE PINT mark. Consequently, Sloan argues that purchasers of commercial urinals who see the phrase THE PINT will associate that mark with the flush volume of the urinal rather than the producer, Zurn.

Stated plainly, a generic term "is essentially the common name for an article." <u>Carnivale</u>, 700 F.Supp.2d at 666. In determining whether a term is generic, courts utilize the primary significance test, which inquires whether "the primary significance of a term in the minds of the

consuming public is the product or the producer." A.J. Canfield Co., 808 F.2d at 292-93, 298. In other words, "[i]f the term refers to the product . . ., the term is generic. If, on the other hand, it refers to one source or producer of that product, the term is not generic." E.T. Browne, 538 F.3d at 192 (noting by example that "'Cola' is generic because it refers to a product, whereas 'Pepsi Cola' is not generic because it refers to the producer."). "Evidence of the public's understanding of the term [at issue] may be obtained from any competent source, such as purchaser testimony, consumer surveys, listings in dictionaries, trade journals, newspapers, and other publications." Berner Intern. Corp. v. Mars Sales Co., 987 F.2d 975, 982-83 (3rd Cir. 1993) (citing In re Merrill Lynch, Pierce, Fenner, and Smith, Inc., 828 F.2d 1567, 1570 (Fed. Cir. 1987)). However, "direct consumer evidence, e.g., consumer surveys and testimony is preferable to indirect forms of evidence." Berner, 987 F.2d at 982-83. Moreover, because the focus of the primary significance test is on the "minds of the consuming public," see id. at 192-94, categorization of a mark as generic, descriptive or otherwise is usually "a factual issue for the jury." Ford Motor Co., 930 F.2d at 292 n. 18; E.T. Browne, 538 F.3d at 192 (noting that designation of a term as descriptive or generic is a question of fact); A.J. Canfield, 808 F.2d at 307 n. 24 ("Courts of Appeals have generally held that a designation's level of inherent distinctiveness is a question of fact."); McCarthy§ 12:12.

Applying the primary significance test here, the relevant inquiry is whether consumers of commercial urinals understand the phrase "THE PINT" to refer specifically to the Zurn urinals branded with that mark or generically to any urinal that utilizes only one pint of water to flush. As noted above, Sloan contends that THE PINT is generic because pint "is essentially the common name" for the distinguishing feature of the urinal. Carnivale, 700 F.Supp.2d at 666.

Zurn counters that it is standard practice in the commercial plumbing industry to describe flush volume in terms of gallons per flush (gpf) or liters per flush (lpf), rather than in pints. Zurn President Carl Nicolia ("Nicolia"), among others, testified that flush volume in the urinal industry "was typically as one gallon per flush, five liters per flush . . . I believe the way the industry has traditionally referred to it is gallons per flush." See Zurn Appx. 58, Nicolia Depo., p. 85; see also

Zurn Appx. 59, Kennedy Depo., p. 33 (agreeing that "gallons per flush and liters per flush" are "the most common way to express how much water is flushed into a urinal fixture . . ."); Zurn Appx. 49, Akroyd Depo., p. 123 ("Flush has all been in gallons, liters, or fractional-flush, and that's what helps get our products specified."). Zurn asserts that it chose to brand its high efficiency urinals under THE PINT mark precisely because it was unique within the marketplace and would distinguish its urinal from the typical industry offering expressed in gallons per flush or liters per flush.

Sloan responds that the term "pint urinal" has acquired widespread use by third parties in the commercial plumbing industry. See Def. Ex. 53, Walsh Decl., ¶ 3 (marketing director of American Standard declaring that American Standard has used the terms "pint" and "1 pint" to describe flush volume since 2008); Def. Ex. 54, Scott Decl. ¶¶ 3-5 (Vice-president of marketing for Mansfield Plumbing Products declaring that Mansfield has used the term "1-pint in connection with its "Brevity" urinal line); Def. Ex. 52, Caroma USA Decl., ¶¶ 3-6 (General Manager of Caroma USA declaring that Caroma has used the terms "1 pint" and "one pint" in connection with its Cube Ultra urinal line for approximately two years). Courts have recognized that "generic use by competitors" can constitute evidence of the generic nature of a term. See Certainteed Corp. v. Boise Cascade Corp., 2004 WL 828359, *4 n. 10 (E.D. Pa. 2004) (citing McCarthy § 12:13). However, none of the evidence cited by Sloan indicates that companies used the term "pint" prior to Zurn's introduction of THE PINT branded urinals in 2007. Moreover, there is record evidence to the effect that Zurn has actively sought to discourage competitor's use of the phrase "pint" in connection with urinals. See Zurn Appx. 71, Nicolia Depo., p. 197 (indicating that Zurn had placed a competitor, American Standard, on notice as to the latter's use of "pint" in advertising); Zurn Appx. 252-257, Cease and Desist Letters. See Certainteed Corp., 2004 WL 828359, *4 n. 10 (noting that evidence of genericness includes "generic use by competitors *that has not been contested by plaintiff*") (emphasis added).

Courts have widely held that direct consumer evidence is critical to the genericness inquiry. See, e.g., Berner, 987 F.2d at 983; McCarthy § 12:2 ("Consumer surveys have become almost *de*

*regueur* in litigation over genericness. Judges are now used to survey evidence and often expect to receive evidentiary assistance by surveys in resolving generic disputes."). Here, Sloan has failed to provide any direct consumer evidence, whether by testimony or survey, as to the primary significance of the phrase THE PINT in the minds of consumers.[1] Instead, Sloan relies upon the deposition of several Zurn executives in an attempt to demonstrate that THE PINT was chosen as a mark merely because it conveyed the flush volume of the urinal to the consumer. Nicolia, for example, testified at deposition that Zurn began to use the word pint in advertising materials to "get the message across that it's one pint per flush." See Def. Ex. 15, Nicolia Depo., p. 86. However, the manner in which Zurn executives understand the term is legally irrelevant to the ultimate determination as to what the term means to the consuming public. See Carnivale, 700 F.Supp.2d at 667 (holding that a statement from the president of the defendant corporation provided "no insight on the view of the consuming public" and therefore "has no bearing on the resolution of the primary significance test; it is legally irrelevant."); Berner, 987 F.2d at 981 (reversing a district court's finding that a mark was generic because the court focused on the term's meaning to a "non-purchasing segment of the population" rather than the consuming public). In light of the foregoing, I conclude that there are material issues of fact as to whether THE PINT is properly considered a generic term.

      I reach the same conclusion with respect to Sloan's alternative contention that THE PINT is merely descriptive and therefore incapable of trademark protection without proof of secondary meaning. A term is descriptive "if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods." A.J. Canfield, 808 F.2d at 297. Zurn counters that the record evidence establishes that THE PINT is, in fact, suggestive. A suggestive mark "suggest[s] rather than describe[s]" the product or source of the goods by conveying "indirect or vague"

---

[1] The parties agree that the typical consumers of commercial plumbing products are engineers, architects, building contractors and facility managers. See Def. Ex. 15, Nicolia Depo., pp. 10-16, 19-22, 29-34.

information about the product or service.  Id.  See also 2 McCarthy § 11:19 at 35.  As with the distinction between generic and descriptive marks, descriptive and suggestive marks are "often separated by only the finest of lines" and are often distinguished "on an intuitive basis rather than as the result of a logical analysis susceptible of articulation."  Sklar, 967 F.2d at 855 (citing Union Carbide Corp. v. Ever-Ready Inc., 531 F.2d 366, 379 (7th Cir. 1976).  Categorization of a mark as suggestive or descriptive is typically "a factual issue for the jury."  Ford Motor Co., 930 F.2d at 292 n. 18; E.T. Browne, 538 F.3d at; A.J. Canfield, 808 F.2d at 307 n. 24; McCarthy§ 12:12.

In the Third Circuit, courts utilize the so-called "imagination test" in order to determine whether a term is suggestive.  This test asks whether the mark "requires imagination, thought or perception to reach a conclusion as to the nature of goods."  A.J. Canfield, 808 F.2d at 297 (citing 1 McCarthy § 11:21).  Classic examples of suggestive marks include "Coppertone" for suntan oil and "Sheer Elegance" for pantyhose.  See Douglas Labs. Corp. v. Copper Tan, Inc., 210 F.2d 453, 456 ("Coppertone" is suggestive for tanning oil because it conveys "a fanciful idea" as to the effect of the oil on human skin rather than a literal description); No Nonsense Fashions, Inc. v. Consol. Foods Corp., 226 U.S.P.Q. 502, 507 (T.T.A.B. 1985) ("Sheer Elegance" for pantyhose is suggestive because it describes both the sheerness of texture and suggests the "ultimate in elegance").  Common examples of marks that are merely descriptive include "Vision Center" for optical services and "Investacorp" or a company providing investment services.  See Vision Center v. Opticks, Inc., 596 F.2d 111, 114 (5th Cir. 1979); Investacorp, Inc. v. Arabian Inv. Banking Corp., 931 F.2d 1519, 1523-24 (11th Cir. 1991).

Sloan contends that THE PINT is merely descriptive because, in its view, the mark simply conveys the fundamental characteristic of a pint urinal (i.e., that it flushes with only a pint of water).  (Brief in Support of Summary Judgment, p. 10).  In support of its contention, Sloan again relies on deposition testimony of various Zurn representatives.  For example, Nicolia stated that he felt THE PINT "was catchy, descriptive.  It captured the essence of the product."  See Def. Ex. 15, Nicolia Depo., p. 127.  Nicolia also acknowledged that "[p]int is a descriptive term.  It's an old English unit

of measure.  Not a surprise to anyone."  Id. at 83; see also Def. Ex. 16, Kubiak Depo., p. 74 (indicating "yes" in response to a query as to whether Zurn sought to trademark THE PINT because the urinal used a pint of water to flush).

In response, Zurn contends that "as with the genericness inquiry discussed above, the proper perspective from which the mark should be viewed for purposes of the suggestive/descriptive categorization is from that of the ultimate consumer."  (Brief in Opposition to Summary Judgment, p. 10.  Zurn asserts that THE PINT is properly viewed as suggestive, rather than descriptive, because a consumer viewing the mark "has to first make the association between THE PINT and a volume of water" and then "take the further imaginative leap between this volume of water and the flushing capacity of the urinal."  (Brief in Opposition to Summary Judgment, pp. 10-11).  Zurn points out that the record contains evidence that flush volume in the commercial plumbing industry is traditionally described in terms of liters or gallons, rather than pints.  Zurn further contends that THE PINT plays upon the imagination of the consumer by invoking alternate meanings such as "half-pint" or "pint-sized," phrases which call to mind an item of diminutive size or an underdog rather than a unit of measure.  Zurn argues that these "double entendres" are utilized by it in their advertising to indicate, for example, that THE PINT provides "HIGH PERFORMANCE, LOW MAINTENANCE IN A PINT SIZED PACKAGE."  See Zurn Appx. 62, Advertisement.

Courts have held that this type of word play can tilt a mark into the suggestive category.  See, e.g., Estee Lauder, Inc. v. The Gap, Inc., 932 F.Supp. 595, 609 (S.D.N.Y. 1996) (concluding that "a mark that consists of a double or triple entendre, at least one meaning of which is suggestive, is protectable without proof of secondary meaning."), reversed on other grounds, 108 F.3d 1503 (2nd Cir. 1997); Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694, 700 (2nd Cir. 1961) (holding that the mark "Poly Pitcher" for a polyethylene pitcher was suggestive in part because it was "reminiscent or suggestive of Molly Pitcher of Revolutionary time"); In re Colonial Stores, Inc., 394 F.2d 549, 551 (C.C.P.A. 1968) (holding that "SUGAR & SPICE" for baked goods was "more than a mere description of the ingredients of the goods" because it evokes associations with the rhyme

13

"everything nice"); In re Priefert Manufacturing Co., 222 U.S.P.Q. 731 (T.T.A.B.1984) (HAY DOLLY not merely descriptive for self-loading trailers for hauling bales); In re National Tea Co., 144 U.S.P.Q. 286 (T.T.A.B.1965) (NO BONES ABOUT IT not merely descriptive of boneless ham).

In sum, I conclude that there is a triable issue of fact on this record as to whether THE PINT is generic, descriptive or suggestive.


2.    *ZURN 1, ZURN ONE, and ZURN ONE SYSTEMS*

Sloan contends that the ZURN 1, ZURN ONE, and ZURN ONE SYSTEMS marks (collectively, the "ZURN Marks") have been abandoned and, as such, are no longer valid and protectable.  Specifically, Sloan asserts that Zurn uses the Zurn Marks to describe "a system or process for selling other Zurn branded products" rather than to identify any specific plumbing products.  (Brief in Support of Summary Judgment, p. 8).

15 U.S.C. 1127 provides in relevant part that "a mark shall be deemed 'abandoned' if . . . its use has been discontinued with intent not to resume such use."  The statute further provides:

> Intent not to resume may be inferred from circumstances.  Nonuse for 3 consecutive years shall be prima facie evidence of abandonment.  "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

Id.  In order to establish abandonment under the Lanham Act, "it is necessary to show not only acts indicating a practical abandonment, but an actual intent to abandon."  Marshak v. Treadwell, 240 F.3d 184, 198 (3rd Cir. 2001); see also Commerce Bancorp, LLC v. Hill, 2010 WL 2545166, *11 (D.N.J. 2010) (stating that the elements of abandonment under the Lanham Act are 1) cessation of use of the mark; and 2) intent not to resume use of the mark); Warren Pub. Co. v. Spurlock, 645 F.Supp.2d 402, 434 (E.D. Pa. 2009) (same).  "A party arguing for abandonment has a high burden of proof," see Doebler's Pennsylvania Hybrids, Inc. v. Doebler, 442 F.3d 812, 822 (3rd Cir. 2006),

because "abandonment, being in the nature of a forfeiture, must be strictly proved." United States Jaycees v. Philadelphia Jaycees, 639 F.2d 124, 139 (3rd Cir. 1981).

In support of its argument that Zurn no longer uses the Zurn Marks in conjunction with commercial urinals, Sloan cites to the deposition of Nicolia who testified that:

> Zurn One is more than just a product. The brand goes from the engineer who uses Zurn One as his configurating process, so he goes on to the configurator, he's able to pick all the products, combine it into one, Zurn One SKU and keep that, order it again a week from now, a year from now, call it whatever he wants to call it.

Def. Ex. 15, Nicolia Depo., p. 71. Zurn executive Donald Kubiak similarly testified that Zurn One "was the process that Zurn used to sell tangible products collectively." Def. Ex. 16, Kubiak Depo., p. 17. Daniel Bensur stated that Zurn One "is a specific naming nomenclature of a brand initiative, or rather an initiative by Zurn, identifying that the process of being able to prepackage and deliver . . . related parts for an installation in one deliverable entity could save time, money, energy and effort by a contractor." Def. Ex. 17, Bensur Depo., pp. 56-57. Based on this testimony, Sloan contends that Zurn only uses the Zurn Marks to describe a system used to prepackage parts for installation, rather than the individual products or goods themselves.

In response, Zurn cites testimony indicating that the Zurn Marks are used in connection with both the process of prepackaging various Zurn products *and* the individual products themselves. Nicolia stated, for example, that the "Zurn 1 concept . . . is the product, a combination of products packaged." Zurn Appx. 204, Nicolia Depo., p. 119. See also Zurn Appx. 206-07, Allen Depo., pp. 68-69 (stating that "the Zurn 1 package . . . is a product offer by Zurn."). Zurn also has submitted a depiction of a Zurn product packaging box with the Zurn One mark affixed. See Zurn Appx. 205. Finally, Zurn notes that the record is devoid of any evidence that Zurn has expressly or by inference evinced the requisite intent to abandon the Zurn Marks.

Given the "high burden of proof" on Sloan to demonstrate that the marks have been abandoned, <u>Doebler,</u> 442 F.3d at 822, and the fact that the resolution of this issue turns, in, part on questions of intent, I find that there are material issues of fact which preclude summary judgment on this basis.

**B.      Is There A Likelihood of Confusion?**

Likelihood of confusion exists "'when the consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark.'" <u>Ford Motor Co.</u>, 930 F.2d at 292 (quoting <u>Scott's Paper Co. v. Scott's Liquid Gold, Inc.</u>, 589 F.2d 1225, 1229 (3rd Cir. 1978)). "Proof of actual confusion is not necessary; likelihood is all that need be shown." <u>Id</u>. (quoting <u>Opticians Ass'n of America v. Independent Opticians of America</u>, 920 F.2d 187, 195 (3rd Cir. 1990)). In determining whether there is a likelihood of confusion, the Third Circuit has enumerated the following factors[2] to be considered:

> (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of the public because of the similarity of function; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market.

---

[2]      These ten factors, commonly referred to as the "Lapp factors" or the "Lapp test," derive from the Third Circuit's decision in <u>Interpace Corp. v. Lapp, Inc.</u>, 721 F.2d 460, 463 (3rd Cir. 1983).

Scott's Paper, 589 F.2d at 1229. "None of these factors is determinative in the likelihood of confusion analysis and each factor must be weighed and balanced against the other." Sabinsa Corp. v. Creative Compounds, LLC, 609 F.3d 175, 182-83 (3rd Cir. 2010) (quoting Checkpoint Systems, Inc. v. Check Point Software Technologies, Inc., 269 F.3d 270, 280 (3rd Cir. 2001)). That said, in cases between direct competitors, such as Zurn and Sloan, the first factor - similarity of the marks - "takes on great prominence." A&H Sportswear, 237 F.3d at 214. On the other hand, factors seven, nine and ten are "not apposite" for determining whether a likelihood of confusion exists in actions between direct competitors because, "[b]y definition, the goods are competing, their function is the same, and the senior and junior user are already in each other's markets." Id. at 212.

In order to analyze likelihood of confusion, it is necessary to precisely delineate the scope of the allegedly infringing use of Zurn's trademarks. As discussed in the parties' briefs and at oral argument, Zurn concedes that Sloan may use the term "pint" to quantify, as a unit of measure, the flush volume of a urinal. (Plaintiff's Responsive Statement of Facts, Doc. 65, ¶ 33) ("Plaintiffs admit that they cannot exclude descriptive use of "pint" to merely quantify a volume of water . . ."). However, Zurn objects to the use of the term "pint" when it is depicted in a product title or header to imply a brand or trademark, such as in the phrases "Sloan 1 Pint Urinal System" or "Sloan Pint Urinal." See Def. Ex. 15, Nicolia Depo., pp. 112. Zurn also contends that the coupling of "Sloan" with the numeral "1" is confusingly similar to the ZURN ONE and Zurn 1 marks. See Def. Ex. 15, Nicolia Depo., pp. 113. Finally, Zurn also contends that the phrase "Sloan 1 Pint Urinal System" is confusingly similar to both the Zurn Marks and THE PINT when used in combination with one another. Although Zurn contends that the Sloan designations discussed above infringe upon all four of the Zurn trademarks, Zurn acknowledges that the primary focus of this litigation concerns Sloan's use of the mark, THE PINT. (Hearing Transcript, 7/8/10, p. 37).

Against this backdrop, I now address each of the pertinent Lapp factors.

*1.      Similarity of the Marks (Lapp Factor One)*

Sloan and Zurn are direct competitors in the commercial plumbing industry and the trademark infringement alleged here concerns high efficiency urinals which compete directly in the marketplace.  As such, the similarity of the marks at issue is "[t]he single most important factor in determining likelihood of confusion." A&H Sportswear, 237 F.3d at 216; see also Checkpoint Sys., 269 F.3d at 281 ("when products directly compete, mark similarity may be the most important of the ten factors in Lapp").  Moreover, because the parties directly compete, "the degree of similarity required to prove a likelihood of confusion is less than in the case of dissimilar products." Kos Pharms, Inc. v. Andrx Corp., 369 F.3d 700, 713 (3rd Cir. 2004) (quoting 4 McCarthy § 23:20.5).

Similarity of competing marks is determined by evaluating their "overall commercial impression." ComponentOne, LLC v. CompnentArt, Inc., 2008 WL 4790661 (W.D. Pa. 2008) (citing 4 McCarthy on Trademarks § 23:22).  A mark's overall commercial impression is assessed by "mov[ing] into the mind of the roving consumer," A&H Sportswear, 237 F.3d at 216, and "compar[ing] the appearance, sounds and meaning of the marks." Checkpoint Sys., 269 F.3d at 281. The proper test is "not a side-by-side comparison but, rather, 'whether the labels create the same overall impression when viewed separately.'" Sabinsa, 609 F.3d at 183 (quoting Kos, 369 F.3d at 713).  This determination is "highly fact sensitive and there is no decisive rule that is dispositive in any particular case." ComponentOne, 2008 WL 4790661, *8 (quoting EMSL Analytical, Inc. v. TestAmerica Analytical Testing, 2006 WL 892718, at *6 (D.N.J. 2006)).

As to THE PINT, Zurn contends that Sloan's use of the word "pint" in the title or header of their high efficiency urinal product infringes upon Zurn's trademarked phrase.  In this regard, the record demonstrates that the parties' respective marks are each typically displayed in a plain text format without unique graphics or fonts to differentiate between them. See Zurn Appx. 34 - 37. Zurn has submitted Sloan advertisements and trade show placards that display the phrase "Pint Urinal" appearing on a separate line from the Sloan house mark, or with the phrase "Sloan 1 Pint"

appearing on a line above "Urinal System." Comparing the parties' respective marks, they each prominently feature the trademarked term "pint," often accompanied by the numeral "1", and each share a similar overall font and style. Compare Zurn Appx. 35-37 and Def. Ex. 44-45.

With respect to the Zurn Marks, the parties disagree as to whether and in what manner Zurn utilizes those marks in combination with THE PINT. Zurn's president testified that the company objected to the phrase "Sloan 1 Pint Urinal Systems" because it traded on "the combination of our two marks, Zurn 1 and The Pint in combination." Def. Ex. 15, Nicolia Depo., p. 117. Zurn asserts that the Zurn Marks and THE PINT appear adjacently and in close proximity on Zurn promotional literature and advertisements. See Zurn Appx. 251 (advertisement describing "The Pint" urinal as part of the "Zurn One ultra low consumption urinal system" and directing consumers to "Zurn One Systems" for suggested purchasing packages). Sloan, however, contests whether Zurn actually utilizes THE PINT in proximity with any of the Zurn Marks when displaying the mark on urinal products. For example, a sample of the etching that Zurn affixes to THE PINT branded urinals does not reveal any of the Zurn Marks. See Def. Ex. 44-45. This dispute is material because the most striking similarities between Zurn's trademarks and Sloan's allegedly infringing uses occur when the Zurn marks are considered in combination.[3] Nonetheless, in resolving Sloan's summary judgment motion, I must, of course, view all facts and the inferences drawn from them in favor of Zurn.

I conclude, therefore, that a visual comparison of the marks supports a finding of similarity, particularly since the appropriate comparison is not made side-by-side, but rather, from the perspective of a consumer who may only have a vague recollection of one parties' mark at the time that they encounter the other. See Fisons Horticulture, Inc. v. Vigoro Industries, Inc., 30 F.3d 466,

---

[3] For example, the phrase "Zurn One Systems," placed in close proximity to "The Pint," shares three words in common with the phrase "Sloan 1 Pint Urinal Systems," including the critical trademarked term "Pint." The overall impression and sound of the phrases, under such an example, is also quite similar. In contrast, the slogan "Sloan Pint Urinal" is completely dissimilar from, for example, the "Zurn One" mark standing alone.

477 (3rd Cir. 1994) ("[T]he appropriate test is not a side-by-side comparison, but whether the marks 'create the "same overall impression" when viewed separately.'") (quoting <u>Banff, Ltd. v. Federated Dep't. Stores, Inc.</u>, 841 F.2d 486, 492 (2nd Cir. 1988)).

Sloan responds that the presence of its well-known house mark in proximity with its use of the term "pint" mitigates any potential confusion upon the part of the consuming public. Courts have recognized that, in certain situations, "[a] junior user's addition of a housemark to a possibly infringing mark has the potential to reduce or eliminate the likelihood of confusion." <u>A&H Sportswear v. Victoria's Secret Stores, Inc.</u>, 167 F.Supp.2d 770, 780 (E.D. Pa. 2001). On the other hand, "a junior user cannot justify its confusing use of another's mark simply by tacking on its own housemark or tradename." <u>Id.</u> at 780 (citing McCarthy 23:10). In fact, the inclusion of a house name can be an *aggravating* factor when it causes the public to "assume the senior user's products are really the junior user's or that the former has become somehow connected to the latter." <u>A&H Sportswear</u>, 237 F.3d at 228 (quoting <u>Ameritech, Inc. v. American Information Technologies Corp.</u>, 811 F.2d 960, 964 (6th Cir. 1987)). This type of "reverse confusion" occurs when the infringing mark "reinforc[es] the association of the trademark exclusively with the junior user to the detriment of . . . the senior user." <u>Freedom Card, Inc. v. JPMorgan Chase & Co.</u>, 432 F.3d 463, 475-76 (3rd Cir. 2005). Here, for example, Zurn asserts that the inclusion of the Sloan house mark next to the allegedly infringing term "pint" will aggravate consumer confusion by causing consumers to associate THE PINT with Sloan rather than Zurn. <u>See</u> <u>A&H Sportswear</u>, 237 F.3d at 230 ("[T]here is also the possibility that the mark will aggravate, rather than mitigate, reverse confusion, by reinforcing the association of the word "miracle" exclusively with Victoria's Secret."). There is anecdotal evidence that some consumers may, in fact, have made this mistake. <u>See</u> Zurn Appx. 60, Nicolia Depo., p. 127 (stating that customers at trade shows have expressed confusion as to whether Zurn or Sloan marketed "The Pint"). On balance, I find that the similarity of the marks favors a finding of likelihood of confusion.

## 2. Strength of the Marks (Lapp Factor Two)

To determine the strength of a mark, courts look to "(1) the distinctiveness or conceptual strength of the mark; and (2) the commercial strength or marketplace recognition of the mark." A&H Sportswear, 237 F.3d at 221.

### a. Conceptual Strength

Classification of the distinctiveness or conceptual strength of a mark is determined by placing the mark within one of the four traditional Lanham Act categories: generic, descriptive, suggestive, or arbitrary. Sabinsa, 609 F.3d at 184-85; ComponentOne, 2008 WL 4790661 at *10. As discussed previously in this opinion, there are disputed issues of material fact concerning whether THE PINT is generic, descriptive, or suggestive. Accordingly, no legal determination can be made as to the conceptual strength of that mark as it pertains to the second Lapp factor.

With respect to the remaining Zurn marks, it is undisputed that the Zurn name is well known in connection with commercial plumbing products. Def. Fact. St. ¶ 14. Moreover, Zurn's successful registration of the ZURN ONE, ZURN 1, and ZURN ONE SYSTEMS marks on the USPTO Principal Registry constitutes *prima facia* evidence that each of those marks is distinctive and legally protectable.[4] Consequently, this component of the second Lapp factor weighs in favor of Zurn.

### b. Commercial Strength

As discussed above, it is undisputed that the Zurn name and Zurn trademarks are commercially strong marks in the plumbing and urinal industries. With respect to THE PINT, Zurn sales records indicate that the company sold over 14,000 units of THE PINT branded urinal, representing approximately $6,000,000 in sales, in the year preceding August, 2009. See Zurn Appx.

---

[4] The Court acknowledges that THE PINT was also successfully registered on the Principal Register. However, as discussed above, there is a triable issue of fact as to whether that mark is generic.

189-90, Kubiak Depo., pp. 142-43. Zurn's pint urinal has been displayed at numerous trade shows and was the focus of an "intense" advertising campaign "unlike anything" done at Zurn prior to that point. Zurn Appx. 162, Kubiak Depo., p. 22. This campaign included extensive advertising in magazines and trade publications, flyers, brochures, and featured articles in trade magazines. Zurn Appx. 171-78, Kubiak Depo., pp. 133-40. Indeed, Sloan CEO Jim Allen described Zurn's efforts to build a strong market presence for THE PINT as "a brilliant job with their Marketing," noting that "Zurn seems to get soooo much mileage out of this one product - the Pint Urinal . . ." Zurn Appx. 167-69, Allen Email. Viewing the record as a whole, there is a triable issue of fact as to the commercial strength of THE PINT as a trademark.

### 3. Price of Goods and Care and Attention of Consumers (Lapp Factor Three)

"When consumers exercise heightened care in evaluating the relevant products before making purchasing decisions, courts have found there is not a strong likelihood of confusion. Where the relevant products are expensive, or the buyer class consists of sophisticated or professional purchasers, courts have generally not found Lanham Act violations." Sabinsa, 609 F.3d at 186 (quoting Checkpoint Sys., 269 F.3d at 284).

The record reflects that commercial urinals are expensive products that cost several hundred dollars each. See Def. Ex. 58, Zurn Price List. The parties also agree that the purchasers of commercial urinals are professional, sophisticated purchasers who exercise enhanced care when deciding between competing products. (Brief in Opposition to Summary Judgment, p.20). Zurn further concedes that purchasers of commercial urinals are likely not confused as to the source of the parties' respective goods at the time of purchase. (Id.).

Zurn contends, however, that "whether or not the purchasers ultimately learn of the source of the goods prior to purchase does not excuse use of Zurn's mark by Sloan to generate *initial interest* in its product." (Brief in Opposition to Summary Judgment, p. 20) (emphasis added).

"Under the theory of initial interest confusion, a sophisticated purchaser of expensive goods or services need not be confused at the time of the actual purchase, but only at the time it is drawn into doing business with the infringer." Sunquest Info. Sys., Inc. v. Park City Solutions, Inc., 130 F.Supp.2d 680, 695 (W.D. Pa. 2000). As explained in a leading treatise on trademark infringement (and quoted by the Third Circuit in Checkpoint Systems):

> [Trademark infringement] can be based upon confusion that creates initial customer interest, even though no actual sale is finally completed as a result of the confusion.
>
> \*     \*     \*     \*     \*     \*     \*
>
> [For example,] the likelihood that a potential purchaser of a specialized computer program may be drawn to the junior user, thinking it was the senior user, is actionable "confusion" even if over the course of several months of the purchasing decision-making process, the buyer's confusion is dissipated. Such a senior user who is the opposer may suffer injury if a potential purchaser is initially confused between the parties' respective marks in that the opposer may be precluded from further consideration by a potential purchaser in reaching his or her buying decision.

3 McCarthy § 23:6 (internal quotations and footnotes omitted) (cited with approval in Checkpoint Sys., 269 F.3d at 292).

For example, in Mobil Oil Corp. v. Pegasus Petroleum Corp., a case cited with approval by the Third Circuit in Checkpoint Systems, the Second Circuit found actionable initial interest confusion and enjoined the defendant from using the trade name "Pegasus" because it was confusingly similar to the plaintiff's famous "flying horse" trademark. Mobile Oil, 818 F.2d 254 (2nd Cir. 1987). Although potential purchasers were not likely to be confused between the two companies at the time that they eventually entered into a contract, the Court found it likely that "Pegasus Petroleum would gain crucial credibility during the initial phases of the deal . . . because of the possibility that Pegasus Petroleum is related to Mobile." Id. at 259. The Court concluded that the possibility that "potential purchasers would be misled into an initial interest in Pegasus . . . works a sufficient trademark injury." Id.

Similarly, in <u>Brookfield Communications, Inc. v. West Coast Entertainment Corp.</u>, 174 F.3d 1036 (9th Cir. 1999), the Ninth Circuit discussed the dangers of initial interest confusion at length in concluding that defendant's use of the website "www.moviebuff.com" infringed upon plaintiff's "MovieBuff" trademark on computer software. The Court reasoned:

> People surfing the Web for information on "MovieBuff" may confuse "MovieBuff" with the searchable entertainment database at "moviebuff.com" and simply assume that they have reached Brookfield's website.... Alternatively, they may incorrectly believe that West Coast licensed "MovieBuff" from Brookfield ... or that Brookfield otherwise sponsored West Coast's database. Other consumers may simply believe that West Coast bought out Brookfield or that they are related companies.
>
> Yet other forms of confusion are likely to ensue. Consumers may wrongly assume that the "MovieBuff" database they were searching for is no longer offered, having been replaced by West Coast's entertainment database, and thus simply use the services at West Coast's web ste. And even where people realize, immediately upon accessing "moviebuff.com," that they have reached a site operated by West Coast and wholly unrelated to Brookfield, West Coast will still have gained a customer by appropriating the goodwill that Brookfield has developed in its "MovieBuff" mark. A consumer who was originally looking for Brookfield's products or services may be perfectly content with West Coast's database (especially as it is offered free of charge); but he reached West Coast's site because of its use of Brookfield's mark as its second-level domain name, which is a misappropriation of Brookfield's goodwill by West Coast.

<u>Id</u>. at 1057 (internal citations omitted) (cited with approval by <u>Checkpoint Sys.</u>, 269 F.3d at 293-94).

Zurn contends that Sloan's use of the word "Pint" in the title and header of its advertising for their line of high efficiency urinals creates initial interest confusion by affording Sloan a "foot in the door" with customers who are looking for THE PINT branded urinals and mistakenly encounter Sloan's "Pint Urinals." The danger of initial interest confusion is particularly high "[w]hen products are similar" because "a firm is more likely to benefit from the goodwill of a firm with an established mark." <u>Checkpoint Sys.</u>, 269 F.3d at 296-97. Zurn President Nicolia testified at deposition that "there has been confusion in trade shows where people would come up to our

booth saying, "Wait, I thought you guys had The Pint. I just saw it at Sloan's." Zurn Appx. 60, Nicolia Depo., p. 127; see also Zurn Appx. 222, Nicolia Depo., p. 128 ("Several people came up and said, 'Hey, we see this pint. That's Sloan? I thought you guys were The Pint,' you guys being Zurn."). Based on the foregoing discussion, I conclude that there are material issues of fact as to this factor.

### 4. Length of Time Mark Used Without Confusion and Evidence of Actual Confusion (Lapp Factors Four and Six)

"Evidence of actual confusion is . . . highly probative of a likelihood of confusion." Sabinsa, 609 F.3d at 187 (citing Checkpoint Sys., 269 F.3d at 291). However, because "[e]vidence of actual confusion is frequently difficult to find," such proof "is not necessary" to demonstrate a likelihood of confusion. Id. (citing Fisons Horticulture, 30 F.3d at 472). Moreover, "[i]f a defendant's product has been sold for an appreciable period of time without evidence of actual confusion, one can infer that continued marketing will not lead to consumer confusion in the future. The longer the challenged product has been in use, the stronger this inference will be." Versa Prods., 50 F.3d at 205; Checkpoint Sys., 269 F.3d at 291.

Zurn has not produced any evidence of actual confusion, other than the isolated incidents of initial interest confusion described in Zurn President Nicolia's testimony. As such, these factors weighs in favor of Sloan. However, as noted above, the absence of such evidence is not fatal to demonstrating likelihood of confusion. Sabinsa, 609 F.3d at 187.

### 5. Intent to Confuse (Lapp Factor Five)

Although "[e]vidence of a defendant's intent is not a prerequisite for finding a Lanham Act violation," such evidence "weighs heavily in favor of finding a likelihood of confusion." Sabinsa, 609 F.3d at 187 (citing Checkpoint Sys., 269 F.3d at 286). In evaluating this factor, "courts must

look at whether the defendant chose the mark to intentionally confuse consumers, and thereby capitalize on the senior user's goodwill, and whether the defendant gave adequate care to investigating its proposed mark." Id. (citing Kos, 369 F.3d at 721). "[A] defendant's mere intent to copy, without more, is not sufficiently probative of the defendant's *success* in causing confusion to weigh such a finding in the plaintiff's favor; rather, defendant's intent will indicate a likelihood of confusion only if an intent to *confuse* consumers is demonstrated via purposeful manipulation of the junior mark to resemble the senior's." A&H Sportswear, 237 F.3d at 225-26 (emphasis in original).

With respect to this factor, the record contains evidence of an email from Sloan CEO Jim Allen ("Allen")[5] concerning Sloan's need to come up with a catchy name for its new .18 gpf urinal. Allen characterizes Zurn's use of the phrase "Pint" for its high efficiency urinal as "very effective, simple, and easily identifiable" and he concludes that Sloan "need[s] to have something to compete with [it]." He also notes:

> The problem is that .18 is more than a Pint. It's also less than a Quart. It's [sic] is roughly 3/4 of a Liter . . . and that doesn't exactly roll of the tongue nicely. The 1 Pint promotions are very effective and as we attempt to get written in to a spec as an equal, or get our product certified, we need to finalize the "number".
>
> Engineering has pushed some things around and says marketing could, and that's a very cautious "could", label it a 1 Pint minimum. The Pint is actually .125 gallons and ours is .180 gallons.
>
> We're only talking about .05 gallons.

Zurn Appx. 13-14, Allen Email 9/26/07. In another email, Allen observes that "[t]he problem is a Pint is such a nice simple measure. And .18 gpf is not." Zurn Appx. 12, Allen Email 9/26/07.

---

[5]     At the time that the email was sent, Allen held the position of Water Conservation Manager.

It is undisputed that Sloan was aware of Zurn's use of the term "THE PINT" in connection with high efficiency urinals prior to its own introduction of a "pint urinal." See also Zurn Appx. 8, Aykroyd Depo., p. 39 (acknowledging that Sloan was aware of Zurn's THE PINT mark prior to introducing a Sloan pint urinal). In my view, the emails raise a triable issue of fact as to whether there was "purposeful manipulation" of Sloan's mark to resemble Zurn's. See A&H Sportswear, 237 F.3d at 225-26 (noting that "an intent to *confuse* consumers is demonstrated via purposeful manipulation of the junior mark to resemble the senior's"). Alternatively, there is an issue of fact as to whether the emails are indicative of a reckless disregard for the integrity of Zurn's THE PINT trademark. See Sabinsa, 609 F.3d at 188 (finding an issue of fact as to intent to confuse in part because of evidence that defendant was "reckless" in choosing a similar mark to that of the plaintiff); ComponentOne, 2008 WL 4790661, *27 ("[A] reasonable juror could find that defendants acted recklessly or carelessly with respect to potential trademark infringement in selecting [their] mark."); but see A&H Sportswear, 237 F.3d at 232-33 ("Although we recognize that our opinion in Fisons perhaps implied that mere carelessness, as opposed to deliberate intent to confuse, would weigh in a plaintiff's favor in a reverse confusion case, we are reluctant to adopt such an interpretation, as it would be manifestly out of step with our prior holdings regarding the relevance of 'intent' in trademark infringement claims.").

In sum, the record contains sufficient evidence to create a triable issue of fact as to Sloan's intent in adopting the term "Pint" in connection with their high efficiency urinals. This factor, accordingly, weighs against summary judgment.


6.      *Extent to Which Targets of the Parties' Sales Efforts are the Same (Lapp Factor Eight)*

"[W]hen the parties target their sales efforts to the same group of consumers, there is a greater likelihood of confusion between the two marks." Sabinsa, 609 F.3d at 188-89 (citing Checkpoint Sys., 269 F.3d at 288-89). Here, it is undisputed that Sloan and Zurn produce directly

competing products and target their sales efforts towards the same group of consumers. As such, this factor weighs in favor of a likelihood of confusion.

### 7.     *Remaining Lapp Factors*

As noted above, the Third Circuit has held that the seventh, ninth and tenth Lapp factors (concerning whether the goods are marketed through the same channels of trade and advertised through the same media, the relationship of the goods in the minds of consumers, and any other facts suggesting that the consuming public might expect the prior owner of the mark to be the manufacturer of both products) are "not apposite" in cases involving directly competing goods. A&H Sportswear, 237 F.3d at 212; see also Freedom Card, 432 F.3d at 482 (noting that Lapp factors seven, nine and ten "are not apposite for directly competing goods.").

### 8.     *Weighing the Lapp Factors*

As discussed above, I find that the critical first factor, the similarity of the marks, supports a likelihood of confusion. The eighth Lapp factor, concerning the targeted sales efforts of the parties, also weighs in favor of a likelihood of confusion. With respect to the second, third, and fifth Lapp factors, I find that there are triable issues of fact. Finally, only the fourth and sixth Lapp factors, concerning actual confusion, favor Sloan.

On balance, Zurn has demonstrated sufficient evidence to raise a triable issue of fact with respect to the likelihood of confusion element of its trademark and unfair competition claims. Consequently, Sloan is not entitled to summary judgment on this ground.

## C.     Zurn's Actual Damages Claim

With respect to damages, the Section 35 of the Lanham Act provides in relevant part:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office [or] a violation under section 43(a) or (d) of this title . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

15 U.S.C. § 1117(a).  The statute thus provides "two distinct forms" of monetary relief  to a successful plaintiff: an accounting or  disgorgement of profits, pursuant to Section 35(a)(1), and actual damages, pursuant to Section 35(a)(2).  Members 1st Federal Credit Union v. Metro Bank, 2010 WL 4318839 (M.D. Pa. 2010) (citing 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:57).

In order to recover actual damages pursuant to Section 35(a)(2), a plaintiff must demonstrate that "the violation caused actual confusion among consumers of the plaintiff's product." Web Printing Controls Co., Inc. v. Oxy-Dry Corp., 906 F.2d 1202, 1204-05 (7th Cir. 1990); Parkway Baking Co. v. Freihofer Baking Co., 255 F.2d 641, 648-49 (3rd Cir. 1958).   In contrast, "no showing of actual confusion . . . is necessary to obtain an accounting for profits under section 35(a)(1)."  Resorts Intern., Inc. v. Greate Bay Hotel and Casino, Inc., 830 F.Supp. 826, 839 (D. N.J. 1992) (citing Web Printing, 906 F.2d at 1204-05; see also Century Distilling Co. v. Continental Distilling Corp., 205 F.2d 140, 144 (3rd Cir.1953), cert. denied, 346 U.S. 900 (1953)).

In its Motion for Summary Judgment, Sloan contends that Zurn is not entitled to seek actual damages pursuant to Section 35(a)(2) in this case because Zurn has failed to cite any evidence of actual consumer confusion.  Zurn, in its Brief in Opposition to Summary Judgment, implicitly concedes that it cannot recover actual damages, arguing instead that "Sloan's motion on actual damages has no bearing on Zurn's claim to disgorge Sloan of its profits."  (Brief in Opposition to Summary Judgment, p. 25).  Consequently, and because I find that Zurn has not presented evidence of actual customer confusion, Sloan's Motion for Summary Judgment is granted as to Zurn's claim for actual damages pursuant to Section 35(a)(2).

**D.     Zurn's Cross-Motion for Summary Judgment**

In a document styled a Partial Motion for Summary Judgment on Defendant's Affirmative Defenses, Zurn argues that two affirmative defenses raised by Sloan - acquiescence and unclean hands - are not supported by the record as a matter of law.

"The doctrine of acquiescence applies when the trademark owner, by affirmative word or deed, conveys its implied consent to another" to use its name or mark. Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc., 143 F.3d 800, 804 (3rd Cir. 1998). The disagreement between the parties as to acquiescence concerns the extent to which Zurn has agreed that Sloan is entitled to use the term "pint" in a descriptive manner to quantify a volume of water, as opposed to use of the term in a trademark sense. This is hotly contested issue between the parties involving disputed material facts and issues of intent, none of which are clearly determinable on the record. As such, Zurn's motion is denied as to this affirmative defense.

The equitable doctrine of unclean hands is invoked when the "party seeking relief has committed an unconscionable act immediately related to the equity the part seeks in respect to the litigation." Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 174 (3rd Cir. 2001). "The nexus 'between the misconduct and the claim must be close.'" Id. (citing In re New Valley Corp., 181 F.3d 517, 525 (3rd Cir. 1999)). The primary basis of Sloan's unclean hands defense is that Zurn has "engaged in a concerted effort to impede the free descriptive use of 'pint' in order to wrongfully obtain a competitive advantage in the pint urinal market." (Sloan's Brief in Opposition to Partial Motion for Summary Judgment, p. 14). Sloan contends that Zurn's aggressive efforts to protect the trademarked term "THE PINT" are calculated to prevent competitors from "using terms which the trademark owner knows to be generic or merely descriptive." Id. at 12 (citing Elec. Info. Publ'ns, Inc. v. C-M Periodicals, Inc., 163 U.S.P.Q. 624, 633 (N.D. Ill. 1969). Zurn responds that it only attempts to prevent competitors from using the term "pint" when such use infringes upon their trademark, as opposed to when the term is used merely to quantify a volume of water.

As discussed above, the parties clearly disagree as to whether THE PINT represents a generic, descriptive, or inherently distinctive mark. The parties also dispute the extent to which Zurn has sought to prevent competitors from using the term "pint" in a descriptive sense. Consequently, Zurn's motion is denied as to this affirmative defense as well.

## IV.  CONCLUSION

For the reasons set forth herein, Defendant's Motion for Summary Judgment is granted in part and denied in part. Plaintiff's Cross-Motion for Partial Summary Judgment is denied. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ZURCO, INC., and , | ) |
| ZURN INDUSTRIES, LLC., | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) C.A. No. 08-185 Erie |
| | ) District Judge McLaughlin |
| SLOAN VALVE COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**<u>ORDER</u>**

AND NOW, this 31st day of March, 2010, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Defendant Sloan Valve Company's Motion for Summary Judgment is granted in part and denied in part. Summary judgment is GRANTED in favor of Sloan only as to Zurn's claim for actual damages under Section 35(a)(2) of the Lanham Act. Summary judgment in favor of Sloan is otherwise DENIED.

Summary judgment is DENIED as to Plaintiff Zurn's Partial Motion for Summary Judgment on Defendant's Affirmative Defenses.

It is so ORDERED.

/s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record. ___

32